IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| AMY GARRITY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:12-CV-10-WKW |
| ) | [WO] |
| HYUNDAI INFORMATION ) | |
| SYSTEMS NORTH AMERICA, ) | |
| LLC, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Amy Garrity claims she has been the victim of illegal discrimination because she is a woman. According to Ms. Garrity, her time as an employee of Defendant Hyundai Information Systems North America, LLC ("HISNA"), was marked by gender discrimination and sexual harassment in violation of federal law. Ms. Garrity also claims HISNA violated federal law by not paying her overtime and paying her less than her male coworkers. HISNA now moves for summary judgment. (Doc. # 31.) The motion has been fully briefed (Docs. # 32, 33, 37)[1] and is ready for resolution. For the reasons that follow, HISNA's motion is due to be granted.

---

[1] Instead of issuing a separate ruling on the pending evidentiary motions (Docs. # 36, 49), the court construes them as additional arguments in support of the parties' positions. In ruling on the motion for summary judgment, the court will consider only "evidence that is admissible on its face or can be reduced to admissible form." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24 (1986); *Macuba v. DeBoer*, 193 F.3d 1316, 1322–24 (11th Cir. 1999).

## I. JURISDICTION AND VENUE

The court has subject matter jurisdiction under 28 U.S.C. § 1331. Personal jurisdiction and venue are uncontested.

## II. STANDARD OF REVIEW

To succeed on summary judgment, the movant must demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence and the inferences from that evidence in the light most favorable to the nonmovant. *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact. *Id.* If the movant meets its evidentiary burden, the burden shifts to the nonmoving party to establish – with evidence beyond the pleadings – that a genuine dispute material to each of its claims for relief exists. *Id.* at 324. A genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable fact-finder to return a verdict in its favor. *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

## III.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Amy Garrity worked as a Helpdesk Analyst for Defendant HISNA from January 5, 2009, to October 23, 2013.  Ms. Garrity's job was to provide technical support for the employees at the Hyundai plant in Montgomery, Alabama.  Ms. Garrity worked with one male coworker, also a Helpdesk Analyst, and one male supervisor, the Helpdesk Team Leader.

Ms. Garrity's assignments came in the form of "tickets," which were placed into electronic queues.  When Ms. Garrity finished an assignment, the ticket was moved from the open queue to the closed queue.  As a general rule, the Helpdesk was expected to close tickets within two days of receiving them.

While Ms. Garrity worked for HISNA, she claims she suffered sexual harassment and discrimination.  In the early part of 2011, she filed a Notice of Charge of Discrimination with the Equal Employment Opportunity Commission,[2] which she claims provoked retaliation.  While Ms. Garrity worked at HISNA, she consistently earned a lower wage than her male coworker.  According to Ms. Garrity, HISNA also

---

[2] Ms. Garrity says she did not file her notice of charge until May 20, 2011 (Doc. # 33, at 9), which is the date written on the notice itself (Doc. # 32-1, at 52).  But HISNA claims in its brief to have received the notice of charge on March 24, 2011 (Doc. # 32, at 9.)  As the following discussion will show, the earlier date is more advantageous for Ms. Garrity's retaliation claim, so the court will resolve the discrepancy in her favor and assume HISNA received the notice on March 22.

tried to avoid paying her overtime by tampering with her timecards and instructing her to inaccurately report the hours she worked.

Within ninety days after receiving her right-to-sue letter from the EEOC,[3] Ms. Garrity filed this lawsuit. HISNA now moves for summary judgment.

## IV. DISCUSSION

Ms. Garrity's four-count complaint alleges HISNA is liable for gender discrimination and sexual harassment in violation of Title VII, 42 U.S.C. §§ 2000e–2(a)(1) (Count I), retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a) (Count II), a violation of the Equal Pay Act, 29 U.S.C. § 206(d) (Count III), and violations of the Fair Labor Standards Act, 29 U.S.C. §§ 206 and 207 (Count IV). In her opposition to summary judgment, she accuses HISNA of violating the Family Medical Leave Act. For the reasons that follow, none of those claims survive summary judgment.

---

[3] In Ms. Garrity's opposition brief, she states she received her right-to-sue letter from the EEOC "on or about 04 OCT 2011." (Doc. # 33, at 9–10.) HISNA's sharp-eyed counsel seized on that statement to argue this lawsuit is untimely because it was filed one day after Ms. Garrity's right to sue expired, assuming she actually received her right-to-sue letter on October 4. *See Green v. Union Foundry Co.*, 281 F.3d 1229, 1233–34 (11th Cir. 2002) (recognizing Title VII plaintiffs bear the initial burden of showing they filed their complaint within ninety days after receiving a right-to-sue letter). But the right-to-sue letter Ms. Garrity placed into evidence bears a stamp indicating it was *received* on October 6. A vague statement of counsel in Ms. Garrity's brief is not fatal to her case because the evidence she submitted sufficiently establishes she filed this lawsuit within ninety days after receiving her right-to-sue letter.

A.   **Title VII Gender Discrimination and Sexual Harassment**

HISNA first moves for summary judgment on Count I of Ms. Garrity's complaint, which accuses HISNA of gender discrimination and sexual harassment in violation of Title VII. HISNA's brief explains in careful detail why summary judgment is due on that claim, whether Ms. Garrity proceeds on a theory of disparate treatment or a theory of sexual harassment. Although it is not entirely clear from her brief whether Ms. Garrity persists with a disparate treatment theory or now proceeds solely on a hostile-environment sexual-harassment theory, this opinion will address both.

   *1.   Disparate Treatment*

As HISNA notes in its brief, Ms. Garrity cannot recover for instances of allegedly disparate treatment that occurred before September 25, 2010, because they occurred more than 180 days before Ms. Garrity filed her charge of discrimination. *See* 42 U.S.C. § 2000e-5(e)(1) (requiring charge of discrimination to be filed "within 180 days after the alleged unlawful employment practice"). Although HISNA preemptively explains why Ms. Garrity cannot prevail on fifteen theories she might have pursued (Doc. # 32, at 32–41), Ms. Garrity only identifies three examples of allegedly disparate treatment, all of which occurred before September 25, 2010. (*See* Doc. # 33, at 11 (complaining of an incident that occurred in May 2009); Doc. # 33,

at 12 (complaining of incidents that occurred in June and July 2009); Doc. # 33, at 14 (complaining of an incident that occurred on April 16, 2010).) Thus, even assuming any of those incidents constitute Title VII violations, Ms. Garrity's attempt to hold HISNA liable for them is time-barred.[4]

### 2. *Sexual Harassment*[5]

To prevail on her hostile-environment sexual-harassment claim, Ms. Garrity must present evidence of four elements: "(1) that . . . she belongs to a protected group; (2) that [she] has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable." *Mendoza v. Borden, Inc.,* 195 F.3d 1238, 1245 (11th Cir. 1999). As the second and third elements imply, courts evaluating hostile-environment sexual-harassment claims only consider conduct that is "of a sexual or gender-related nature."

---

[4] Ms. Garrity's brief also complains that she applied for a higher-paying position with HISNA at some point, but she did not get the job. (Doc. # 33, at 21.) To the extent she attempts to base a disparate-treatment claim on that incident, summary judgment is due because Ms. Garrity presents no evidence of a similarly-situated male employee who was treated more favorably. *See Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 842–43 (11th Cir. 2000) (reciting the elements of a *prima facie* case of disparate treatment).

[5] HISNA has not argued that Ms. Garrity's claim of sexual harassment is untimely.

*Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 583 (11th Cir. 2000), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

Ms. Garrity identifies several purported instances of unpleasant working conditions. For example, her brief alleges, without evidence, that a former supervisor called her an "idiot" and asked her if she was stupid. (Doc. # 33, at 14.) She only identifies two instances of conduct of a gender-related nature, though. First, when a Korean customer refused to speak with Ms. Garrity, her supervisor explained it was because she was a woman. Second, the same supervisor, while on the phone with another company, complained that he started having problems after "they put the dang female on the phone." (Doc. # 32, at 14–15.)[6] The question, then, is whether those two instances rise to the level of objective severity required to establish a Title VII hostile-environment sexual-harassment claim.

To evaluate the objective severity of the harassment Ms. Garrity suffered, the court considers the totality of the circumstances, which includes, among other things, "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job

---

[6] Actually, Ms. Garrity did not specifically identify these instances. Instead, she only refers generally to her supervisor's "derogatory comments regarding women in general" without citing to any evidence or explaining what comments he allegedly made. (Doc. # 33, at 19.) The evidence of these two incidents comes from HISNA's submission.

performance." *Mendoza*, 195 F.3d at 1246.  Neither of the instances Ms. Garrity complains of were physically threatening, and she endured nothing more severe or frequent than the two statements that offended her.  There is no evidence that either of those incidents interfered with Ms. Garrity's job performance.  The Eleventh Circuit has repeatedly held conduct far more egregious than that does not rise to the level of objective severity required to create a hostile work environment. *See Kavanaugh v. Miami–Dade Cnty.*, 775 F. Supp. 2d 1361, 1373 (S.D. Fla. 2011) (collecting cases).

Accordingly, Ms. Garrity has not established a *prima facie* case of sexual harassment in violation of Title VII, so summary judgment is due on that claim.

**B.     Title VII Retaliation**

Because Ms. Garrity does not present direct evidence of retaliation, her Title VII claim is governed by the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010).  First, under McDonnell Douglas, a plaintiff must create an inference of retaliation by establishing a *prima facie* case. If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to present a legitimate, non-retaliatory reason for the adverse employment action. If the

defendant succeeds, the burden shifts back to the plaintiff to demonstrate that the asserted reason was a pretext for retaliation. *See id.* at 1181–82.

To establish a *prima facie* case of retaliation, Ms. Garrity must present evidence sufficient for a reasonable juror to infer three things: (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression. *See Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). It is undisputed that the notice of charge of discrimination Ms. Garrity filed with the EEOC satisfies her burden of proving the first element of her retaliation claim. Most of the instances of alleged retaliation Ms. Garrity identifies, however, cannot support her *prima facie* case.

Most of the instances she identifies occurred before HISNA received her notice of charge on March 22, 2011. First, Ms. Garrity claims she often received competing instructions from superiors. But she only submits evidence of that happening once, on April 16, 2010. (Doc. # 33-1, at 51.) Next, Ms. Garrity, points to instances when others allegedly stole credit for her work. (Doc. # 33, at 16–17.) The evidence Ms. Garrity cites, however, indicate those incidents occurred in 2008 and 2009 (Doc. #33-1, at 54), on November 10, 2009 (Doc. # 33-1, at 56), on March 21, 2011 (Doc. # 33-1, at 55), and while she was away on sick leave. (Ms. Garrity's deposition testimony indicates she returned from sick leave in August 2010 (Doc. 32-1, at 355).) Even

9

assuming any of those incidents qualify as adverse employment actions, none of them can possibly be causally related to Ms. Garrity's notice of charge because they all occurred before anyone at HISNA knew she would file one.

Second, Ms. Garrity complains she was assigned ten times as many "late tickets" as the male Helpdesk Analyst received. (A "late ticket" is one that is at least two days old when it is assigned, thus impossible to complete within two days.) Ms. Garrity claims she received about ten late tickets a week while her coworker only received one. But that portion of her brief is notably devoid of record citations (Doc. # 33, at 16), and she submits no evidence from which a reasonable juror could infer how many late tickets she or the male Helpdesk Analyst usually received per week.

Third, at some point in March 2011, a dispute arose between Ms. Garrity and her superiors. According to HISNA, the evidence shows Ms. Garrity worked fewer hours on March 2, 2011, than she logged on her timesheet. When her superiors questioned her on the discrepancy, Ms. Garrity insisted that she worked all the hours she logged on her time sheet. Whatever the truth of the matter (a question the parties continue to vigorously dispute), it is undisputed that HISNA resolved the dispute in Ms. Garrity's favor and paid her for all the time she claimed to have worked. (Doc. # 32, at 12.) In short, Ms. Garrity's superior asked her on one occasion to double check her time sheet. That is not an adverse employment action.

Finally, Ms. Garrity claims she was given the ability to manage her assignment queue in early April 2011, only to lose that ability a day later. (Doc. # 33-1, at 52.)[7] Ms. Garrity's brief claims her male coworker retained the ability to manage his assignment queue after she lost that right (Doc. # 33, at 16), but her evidence tells a different story. After Ms. Garrity lost the right to manage her assignment queue, "[the Helpdesk Team Leader] was the only one that was allowed to assign tickets." (*See* Doc. # 33-1, at 52 .) It follows then that the male Helpdesk Analyst lost the ability to manage his queue at the same time she did. Ms. Garrity's deposition testimony confirms that conclusion. (*See* Doc. # 516, at 238–39 (agreeing that the male Helpdesk Analyst lost the right to manage his queue on the same day she did).)

Ms. Garrity's loss of the right to manage her own assignment queue may well suffice to establish a *prima facie* case of retaliation. But even if it does, HISNA's evidence provides a legitimate, non-retaliatory reason for that action: The Helpdesk had issues closing out tickets. (Doc. # 32, at 16.) Ms. Garrity has presented no evidence suggesting that reason is pretextual, so she lacks sufficient evidence to defeat summary judgment on her retaliation claim.

**C.     Equal Pay Act**

---

[7] It is undisputed that Ms. Garrity was unable to manage her queue for months before she filed her notice of charge.

To establish a *prima facie* case under the Equal Pay Act, Ms. Garrity must raise a genuine issue of material fact that "her job and that of a male employee, who is paid more, are substantially equal." *Hammock v. Nexcel Synthetics, Inc.*, 201 F. Supp. 2d 1180, 1188 (N.D. Ala. 2002) (citing *Arrington v. Cobb Cnty.*, 139 F.3d 865, 876 (11th Cir. 1998)). Although Ms. Garrity has not presented any evidence of a male employee in a similar position who earned a higher wage, HISNA's brief concedes her male coworker with the same job title earned a slightly higher wage. (*See* Doc. # 32, at 26.) In other words, HISNA's evidence establishes Ms. Garrity's *prima facie* case for her.

With a *prima facie* case thus established, the burden shifts to HISNA to justify the wage differential under one of the four exceptions set out in the Equal Pay Act. *See Hammock*, 201 F. Supp. 2d at 1188–89 (setting out four statutory exceptions, which include "a differential based on any other factor other than sex"). To that end, HISNA submits evidence that the pay differential is justified by the male Helpdesk Analyst's experience, education, and performance. Ms. Garrity makes no meaningful response to that evidence,[8] and there is nothing in the record to cast doubt on HISNA's

---

[8] Ms. Garrity's full response reads as follows: "Defendant compares Plaintiff's pay increase as being equal to a male co-worker but fails to support the statement with any documentation and thus it is merely conjecture and unsupported argument. In fact, the only other HMMA or HISNA help desk co worker mentioned in the Declaration of Robert John is to [the other Helpdesk Analyst], a male, who Defendant has stated in pleadings was NOT similarly situated to Plaintiff, a comparison by Defendant's own argument that is devoid of merit and is nothing more than puffery." (Doc. # 23.)

12

legitimate justifications for the male Helpdesk Analyst's higher wage. Accordingly, summary judgment is due on Ms. Garrity's claim under the Equal Pay Act for failure to raise a genuine issue of material fact with respect to pretext.

**D.     Fair Labor Standards Act**

Ms. Garrity's claim under the Fair Labor Standards Act accuses HISNA of failure to pay earned overtime. Before she can prevail on that claim, Ms. Garrity must demonstrate (1) that she worked overtime without compensation and (2) that HISNA knew or should have known of that overtime work. *See Allen v. Bd. of Pub. Educ. For Bibb Cnty.*, 495 F.3d 1306, 1314–15 (11th Cir. 2007). The following passage from Ms. Garrity's brief, if supported by evidence, would satisfy that standard:

> On numerous occasions, Plaintiff filled out her timecard denoting overtime hours; however, Plaintiff was never compensated for these hours. When Plaintiff inquired about the discrepancy in compensation she was told it was just an error and would be fixed the next pay period; it usually never got fixed.

All that passage lacks is a record citation. Indeed, Ms. Garrity's does not present any evidence showing she ever worked a single hour of uncompensated overtime.

The closest she comes is an affidavit of Shondrell L. Edwards, a former HISNA human resources associate. Although Ms. Edwards's duties did not involve working with payroll, she testifies she was familiar with the time records of some employees, including Ms. Garrity. (Doc. # 33-1, at 2–3.) Based on that familiarity, Ms. Edwards

13

reports that another employee in human resources would often alter time sheets to avoid overtime hours, apparently on instructions from above. Ms. Edwards does not, however, say anywhere in her affidavit that Ms. Garrity's time sheets were altered. Even assuming Ms. Edwards's testimony on that point is admissible (a conclusion HISNA's objection (Doc. # 36) casts into serious doubt), it simply does not provide sufficient evidence to create a genuine issue of material fact with regard to Ms. Garrity's allegedly unpaid overtime.

Interestingly, Ms. Garrity's brief does not cite her own deposition testimony on the topic of unpaid overtime. HISNA's brief, however, cites a few passages in which Ms. Garrity corroborates Ms. Edwards's testimony. (Doc. # 32, at 29.) But even those portions of Ms. Garrity's deposition fall short of the evidence Ms. Garrity needs. Although there is evidence that Ms. Garrity was instructed to inaccurately report her hours, she has not pointed to a single instance in which she complied with those instructions. More importantly, Ms. Garrity has not presented any evidence, even in the form of her own testimony, of a pay period where she worked overtime without compensation.

According to Ms. Garrity's own testimony, even she is unable to estimate how much overtime she thinks she is owed. (Doc. # 32-1, at 261.) Without more, a reasonable jury could do more than speculate about how much unpaid overtime Ms.

Garrity worked, or whether she worked any at all. Accordingly, Ms. Garrity's evidence is insufficient to create a genuine issue of material fact on her Fair Labor Standards Act claim, so summary judgment is due.

### E. Family Medical Leave Act

In addition to the claims discussed above, Ms. Garrity's opposition to summary judgment accuses HISNA of violating the Family Medical Leave Act. Because her complaint does not mention that claim, it is not properly before the court. Accordingly, the court expresses no opinion on the subject.

## V. CONCLUSION

It is therefore ORDERED that HISNA's motion for summary judgment (Doc. # 32) is GRANTED. An appropriate judgment will follow.

DONE this 26th day of February, 2013.

                                          /s/ W. Keith Watkins
                                  CHIEF UNITED STATES DISTRICT JUDGE